```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF ALABAMA
                   SOUTHERN DIVISION
```

```
VICTOR J. FISCHER,                :
                                  :
     Plaintiff,                   :
                                  :
vs.                               :    CIVIL ACTION 12-0215-M
                                  :
MICHAEL J. ASTRUE,                :
Commissioner of Social Security,  :
                                  :
     Defendant.                   :
```

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 12). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 18). Oral argument was waived in this action (Doc. 17). Upon consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED.**

This Court is not free to reweigh the evidence or

1

substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was thirty-seven years old, had completed a high school education (Tr. 40), and had previous work experience as a construction worker and a car detailer (Tr. 42-43). In claiming benefits, Plaintiff alleges disability due to ankle fracture and fusion and rotator cuff teninopathy (Doc. 12 Fact Sheet).

The Plaintiff filed applications for disability benefits and SSI on January 19, 2010 (Tr. 144-54). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that although he could not return to his past relevant work, there were specific light work jobs which Fischer could perform (Tr. 22-30). Plaintiff requested review of the

2

hearing decision (Tr. 18) by the Appeals Council, but it was denied (Tr. 1-5).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Fischer alleges the single claim that the ALJ did not properly consider the opinions and diagnoses of his treating physician (Doc. 12). Defendant has responded to—and denies—these claims (Doc. 13). The relevant evidence of record follows.

On December 31, 2008, Fischer underwent arthroscopic subacromial decompression and distal clavicle excision with limited debridement of undersurface cuff tear by Dr. Clayton G. Lane for a work accident sustained earlier in the year (Tr. 249-50).  The diagnosis was left shoulder impingement, acromioclavicular arthritis, and partial thickness cuff tear. Two weeks later, Plaintiff complained of pain in—and tingling down—his left arm; Dr. Lane noted mild tenderness over the AC joint with a passive range of motion at 80-90° (Tr. 248). Abduction and flexion were without pain; Fischer was neurovascularly intact.  The doctor prescribed physical therapy and cautioned that there should be no lifting of the left upper extremity.  On February 13, 2009, Dr. Lane noted excellent active range of motion, with minimal tenderness over the AC

3

joint, and 5/5 cuff strength; the doctor expressed the opinion that he could find no reason for Fischer's failure to progress with physical therapy (Tr. 247).  On March 23, 2009, Plaintiff reported pain at three-to-four on a scale of ten and pain at night; Dr. Lane noted minimal tenderness over the AC joint and moderate tenderness over Codman's point (Tr. 246).  He further noted that "[h]e has pain with supraspinatus testing but 4-5/5 strength and 5/5 infraspinatus and subscap.  He has no tenderness over the biceps tendon" (Tr. 246).  The doctor expressed the opinion that Plaintiff could perform light duty for a forty-hour work week and noted that Fischer had complained of knee and ankle pain more than shoulder pain.  On April 23, Dr. Lane noted no pain with cross arm adduction; he had moderate pain on supraspinatus testing, though there was no limitation of motion (Tr. 245).  On June 3, Plaintiff underwent a physical work performance evaluation (Tr. 234-44) from which Dr. Lane concluded that he had reached maximum medical improvement with a loss of strength with overhead activity within the 10-30% range; this meant that he had a ten percent permanent partial disability for the upper extremity, translating to a six percent whole person impairment (Tr. 233).  Nevertheless, Dr. Lane expressed the opinion that Fischer could perform medium level

4

work eight hours a day.

On July 2, 2009, Dr. Albert Pearsal, an Orthopaedic Surgeon at the USA Department of Orthopaedic Surgery, examined Plaintiff who was healthy and in no acute distress (Tr. 269-70,; *see also* Tr. 347-51).  The doctor noted that Fischer had

> excellent forward flexion and extension of the neck with full rotation, left to right, with no evidence of neurologic symptoms.  He has full, symmetric range of motion actively with forward flexion of 180° bilaterally and active internal rotation to L5 on the right and T10 on the left.  He has very minimal to mild subacromial impingement signs.  He has a negative cross-arm test.  He has no evidence of atrophy, and the portals appear to be well healed.  He is intact to trapezius, biceps, triceps, wrist dorsiflexion and volar flexion.  He has no sensory deficits.
> Passive range of motion is symmetric bilaterally with IGHE of 90°, ER at 0° of 45°, and ER and IR both at 90°.  He appears to have diffuse deltoid tenderness when the arm is actively internally rotated.

(Tr. 169).  After reviewing radiographic studies, Pearsal's assessment was that Fischer had residual left subacromial inflammation with possible rotator cuff tear pain (*id.*).  The doctor prescribed Lyrica[1] and Soma.[2]  An MRI performed on July 27

---

[1] *Lyrica* is used for the management of neuropathic pain.  **Error! Main Document Only.***Physician's Desk Reference* 2517 (62nd ed. 2008).

[2] **Error! Main Document Only.***Soma* is a muscle relaxer used "for the

5

showed subacromial effusion and some AC joint fluid; otherwise, the rotator cuff appeared to be grossly intact (Tr. 266).

On January 8, 2010, Dr. Frank Dozier, a Family Practitioner at the Family Medical Center, saw Plaintiff who was complaining of pain in his right foot at a level of eight on a ten-point scale; he also indicated that he experienced pain in his left shoulder (Tr. 271-74; *see also* Tr. 343-346).  On examination, Plaintiff had tenderness in the lateral left shoulder; range of motion caused discomfort.  He had decreased muscle mass and strength on the left in comparison with the right which was unexpected as he was left hand dominant; strength on the left was 30-40% less in the left arm compared to the right.  Fischer also had flexion of his distal foot and toes with hammer toe configuration of his toes with calluses of the ends of his toes form walking on them.  Plaintiff also had decreased strength of the leg with flexion changes of his right foot.  Dr. Dozier's plan was to have Fischer examined by an orthopedic surgeon and possibly provide physical therapy; he also prescribed Naprosyn.[3]

Inpatient records from Washington County Hospital show that

---

relief of discomfort associated with acute, painful musculoskeletal conditions," the effects of which last four-to-six hours.  *Physician's Desk Reference* 2968 (52nd ed. 1998).

   [3]**Error! Main Document Only.***Naprosyn*, or *Naproxyn*, "is a nonsteroidal anti-inflammatory drug with analgesic and antipyretic properties" used, *inter alia*, for the relief of mild to moderate pain.

Plaintiff was admitted, through the Emergency Room, on March 2, 2010 for twenty-three hours of observation for a complaint of acute abdominal pain (Tr. 275-84). The pain was determined to be a kidney stone, so Fischer was discharged with a prescription for Lortab.[4]

On March 5, 2010, Dr. Pearsal, at the USA Department of Orthopaedics, noted that Plaintiff had "positive Neer and Hawkings impingement sign. Rotator cuff appears to be grossly intact, but he has significant pain with overhead activities" (Tr. 328; *see generally*, Tr. 319-29). Surgery was recommended. On April 12, six days after left shoulder arthroscopy, Fischer rated his pain as six of ten, with a tingling sensation radiating down his arm into his fingers; "[f]orward flexion [was] 140°, abduction 130°, internal rotation to L5" (Tr. 326). Plaintiff was prescribed Lortab and Soma and he was to continue with physical therapy. On May 17, 2010, Dr. Pearsal noted the following:

> He has forward flexion which is improving to 160, active abduction to nearly 160, active internal rotation is to probably L3 or L4 compared to T12 on the right, passive range

---

*Physician's Desk Reference* 2458 (52nd ed. 1998).

[4] **Error! Main Document Only.** *Lortab* is a semisynthetic narcotic analgesic used for "the relief of moderate to moderately severe pain." *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

7

> of motion is nearly normal with external
> rotation 0 to 75 compared to 90 and ER at 90
> and IR at 90 and 80 and 45 compared to 90
> and 45 on the opposite side.  Rotator cuff
> appears to be grossly intact.

(Tr. 324).  Noting that Plaintiff was sleeping better, the doctor re-prescribed medications and recommended further physical therapy.  On June 24, Pearsal noted that Fischer was doing well; he specifically noted that his "range of motion is nearly symmetric with some mild pain.  With forward flexion and active abduction he still has some mild discomfort and some difficulty sleeping" (Tr. 322).  The doctor re-prescribed medications and recommended continued exercise.

On May 3, 2010, Dr. Frank Dozier prescribed Plaintiff a walking cane for "instability of gait" (Tr. 285).  On May 10, 2010, Dr. Frank L. Dozier saw Plaintiff for complaints of pain in his right foot and ankle; imaging showed no fracture dislocation, or appreciative degenerative changes in the foot (Tr. 339-41).  The ankle, however, exhibited moderate degenerative changes of the intertarsal articulations with some spurring.

Records from Washington County Hospital show that Fischer returned to the Emergency Room on June 15 complaining of kidney stone pain and pain on urination (Tr. 286-98; *see also* Tr. 352-

66).  He was treated with Toradol,[5] morphine, and Phenergan[6] during which time his pain decreased from ten to five on a ten-point scale.

On August 26, 2010, Dr. Albert Pearsal wrote a "To Whom it May Concern" letter that summarized his treatment of Frazier and stating that he had reached maximum medical improvement (Tr. 330-31).  The doctor noted that, on examination, Plaintiff had "forward flexion and active abduction [to] 180 degrees.  His external rotation at 0 and 90 degrees is at approximately 90 degrees, although he has limitation of internal rotation at 90 degrees and 45 degrees" (Tr. 330).  Pearsal noted mild atrophy of his supraspinatus area, but that rotator cuff strength was intact.  The doctor gave Plaintiff "a 2% upper extremity impairment rating for lack of internal rotation and a 6% upper extremity impairment rating for atrophy.  This totals to an 8% upper extremity impairment rating on the left side and a 5% total body impairment rating" (Tr. 330).  Pearsal went on to say that Fischer had permanent "restrictions regarding minimal overhead activities, no lifting repetitively over 10 pounds, no maximum lift over 20 pounds with predominantly [sic] activities

---

[5]*Toradol* is prescribed for short term (five days or less) management of moderately severe acute pain that requires analgesia at the opioid level. *Physician's Desk Reference* 2507-10 (52nd ed. 1998).

below shoulder level" (Tr. 330).

On October 19, 2010, Dr. Frank L. Dozier noted that Plaintiff had to walk with a cane because of chronic pain in his right foot (Tr. 338).  On that same day, the doctor completed a pain form in which he indicated that Plaintiff has chronic right foot pain because of degenerative changes of the intertarsal articulations with some spurring (Tr. 335-36).  Dozier said that Fischer's pain would distract him from adequately performing daily activities or work and that physical activity would greatly increase his pain and cause him to be distracted from his task, possibly even causing abandonment of the task. Plaintiff's pain, or the side effects from medications, were expected to be severe and limit his effectiveness due to distraction, inattention, and drowsiness.  The doctor said that Frazier had been walking with a cane since May 3, 2010 and that this might restrict his work abilities; he also anticipated that surgery might be required to correct Plaintiff's hammer toes.

On February 4, 2011, Fischer was admitted to USA Medical Center for five nights after experiencing an acute ischemic stroke as evidenced by left-sided weakness, right facial droop,

---

[6]**Error! Main Document Only.** *Phenergan* is used as a light sedative. *Physician's Desk Reference* 3100-01 (52nd ed. 1998).

10

and dysarthria[7] (Tr. 367-425).  He was discharged in stable condition with instructions for speech therapy and a good prognosis.

On June 3, 2011, Dr. John G. Yager, Neurologist, examined Plaintiff who had regular heart rate and rhythm with no murmurs or gallops (Tr. 426-33).  The doctor noted very limited range of motion of the right ankle; when walking, Fischer favored his right leg, using a cane to take some of the weight off of that leg.  Dr. Yager expressed the opinion that Plaintiff was capable of performing sedentary work, though he completed a physical capacities evaluation in which he indicated that Fischer could lift twenty pounds continuously, fifty pounds frequently, and one hundred pounds occasionally; he thought he was capable of carrying twenty pounds frequently, fifty pounds occasionally, but never more than fifty pounds.  The Neurologist expressed the opinion that Plaintiff could sit for eight hours at a time and could stand and walk, each, for an hour at a time; he thought he could stand for four hours, and walk for two hours, during an eight-hour day.  Yager stated that Plaintiff needed a cane to walk and could only walk up to twenty feet without it; he found that Fischer could use either hand to continuously reach,

---

[7]The left-sided weakness and right facial droop resolved while

overhead and otherwise, handle, finger, feel, and push/pull. Though he could use his left foot continuously, he could only use his right foot to operate foot controls occasionally.  The doctor thought that Fischer could balance, kneel, and crawl frequently, climb stairs and ramps, stoop, and crouch occasionally, but could never climb ladders or scaffolds.  Dr. Yager also expressed the opinion that Plaintiff could work at unprotected heights and around moving mechanical parts on only an occasional basis.

   At the hearing before the ALJ, Fischer testified that he could not work after injuring his foot, even after seven surgeries to correct it (Tr. 44-45).  He said that since his stroke, he could stand or walk for about thirty minutes before he must sit down (Tr. 47-48).  Plaintiff testified that he could not lift anything but small things with his left hand because of his shoulder (Tr. 48, 50).  He testified that he could not climb a set of stairs, stoop, or squat; he could grip with his right hand, but not his left (Tr. 49).  Fischer could not bathe or dress himself or comb his hair by himself since the stroke (Tr. 50).  Medication (Tylenol 3) helped with ankle pain a little; he suffered pain at seven or eight on a ten-point scale (Tr. 52-

---

Fischer was being transported to the hospital (Tr. 368).

53). He walked with a cane to help him balance (Tr. 54).

The ALJ summarized the medical evidence of record before concluding that Fischer was capable of performing light work as defined in the regulations (Tr. 24).[8] She also found, following the testimony of a vocational expert, that there were specific jobs that Plaintiff could perform. The ALJ found that Fischer's testimony regarding his pain and limitations was not entirely credible, a finding not challenged in this action (Tr. 25).

Plaintiff's only claim in this action is that the ALJ did not accord proper legal weight to the opinions, diagnoses and medical evidence of Plaintiff's physicians. Frazier specifically references the conclusions of Dr. Dozier (Doc. 12, pp. 2-3). It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to

---

[8]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b) (2012).

reject the opinion of any physician when the evidence supports a contrary conclusion."  *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[9] *see also* 20 C.F.R. § 404.1527 (2012).

In her decision, the ALJ found that Dr. Dozier's conclusions regarding Plaintiff's abilities were too restrictive as they were inconsistent with his own treatment records and those of Drs. Lane, Pearsal and Yager.  More specifically, the ALJ noted the following:

> Dr. Lane stated that the functional evaluation revealed a medium level of work was appropriate for 8 hours a day.  Dr. Lane's assessment was consistent with that of Dr. Yager who also placed the claimant at medium work activity.  However, Dr. Pearsal placed him at light lifting.  Although Dr. Yager related that the claimant would be capable of sedentary work related activities, his residual functional capacity is more indicative of medium work activity.  The medical evidence as a whole clearly does not indicate disabled functioning.

(Tr. 28).

The Court finds substantial support for the ALJ's conclusions.  Dr. Dozier's conclusions of severe limitation are not supported by his records or those of Drs. Lane, Yager, or

---

[9]The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1,

Pearsal.  The Court also notes that Dr. Dozier is a family practitioner while the evidence relied on by the ALJ came from specialists.  The Court finds that Fischer's claim that the ALJ did not properly consider his treating doctor's opinions and conclusions is not supported by substantial evidence.

Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.  Judgment will be entered in a separate Order.

DONE this 1st day of October, 2012.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE

1981.